**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **RENARDO HUDSON,** | ) |
| **Plaintiff,** | ) **CIVIL ACTION FILE NO.:** |
| | ) **1:15-CV-0451-WBH** |
| **v.** | ) |
| | ) |
| **CITY OF ATLANTA, GA; and KEVIN KNAPP, individually and in his Official capacity as an employee of the City of Atlanta Police Department** | ) |
| **Defendants.** | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiff Renardo Hudson (hereinafter "Plaintiff" or Mr. Hudson" by and through undersigned counsel, and hereby files this, his Memorandum in Opposition to Defendants' Motion for Summary Judgment. In support, Plaintiff states the following:

## I. STATEMENT OF THE FACTS

As set forth in the original complaint and the amended verified complaint (Paragraphs 8-32), Plaintiff, Renardo Hudson, was sitting in the driver's seat of his 2001 Oldsmobile Aurora 4S on the afternoon of February 20, 2013. Plaintiff was lawfully parked on the side of Smith Street, SW in Atlanta, Georgia. Defendant Kevin Knapp, who was assigned to that particular area, saw Plaintiff sitting in the

vehicle and felt compelled to run the tags and registration of the vehicle. Defendant Knapp saw no crime being committed by Plaintiff and Plaintiff committed no crime in Defendant Knapp's presence or at any time relevant to this action.

According to Defendant Knapp, the area was "well known for the dumping of stolen vehicles." In his police report, Defendant Knapp falsely and deliberately claimed that the "registered owner showed to have a possible warrant out of DeKalb County in the name of "Charles Gray". Contrary to Defendant Knapp's assertions, however, the only registered owner listed in the State of Georgia Department of Drivers Services database was "Renardo Jermaine Hudson". Additionally, Defendant Knapp made no determination that the vehicle Plaintiff was sitting in was stolen or involved in any crime.

Defendant Knapp with a show of authority, "initiated a traffic stop" of the parked vehicle and requested Plaintiff to exit his vehicle and produce his driver's license and registration. Without hesitation, Plaintiff provided both his State issued Driver's License (issued 04/13/2011) and his State of Georgia Motor Vehicle Registration Card (issued 11/28/2012).

Defendant Knapp allegedly crosschecked Plaintiff's information with warrant information out of DeKalb County as well as photographs of "Charles Gray" in "police central". Defendant Knapp deliberately and falsely claimed that Renardo

Hudson's name, height, weight, date of birth, and social security number all matched the information on Warrant # 12-CR-2112 for Charles Gray out of DeKalb County.

Renardo Hudson was not named as an alias or in any way mentioned in the warrant for Charles Gray that was issued on October 4, 2012, some four (4) months earlier. Nor is there any match for the date of birth or weight for Plaintiff as listed on his driver license issued some two (2) years earlier.

Defendant Knapp's statement that the arrest warrant information for Charles Gray matched the description of Plaintiff was an outright deliberate fabrication to detain and arrest him. The address information for Charles Gray was different than the address provided by Plaintiff when he gave Defendant Knapp his state issued driver's license.

Despite the fact that Plaintiff produced several forms of legitimate and valid identification, including his vehicle registration card and state issued identification, and despite Plaintiff's insistence that Charles Gray was his brother who was under federal sentence in custody in the state of Kentucky, Defendant Knapp told Plaintiff he did not care if he was Charles Gray or not and that he was locking him up. Defendant Knapp immediately took Plaintiff into custody and arrested him on the spot and impounded his vehicle.

Defendant Knapp deliberately and maliciously ignored Plaintiff when he attempted to explain that he had severe breathing problems and the cuffs in the

backseat of the police car were having an adverse physical effect on him and was causing him severe physical pain and mental ailments.

After making Plaintiff sit handcuffed in the car on Smith Street for over an hour, Defendant Knapp finally had Plaintiff transported to the Fulton County Jail where he spent the next two (2) days lying on a concrete floor in a holding cell.

At no time, during or prior to arresting Plaintiff, did Officer Knapp take Plaintiff's fingerprints and/or submit the same to a data base as would a reasonable officer in the same situation possessing the same knowledge. At no time did Officer Knapp take steps to verify that Plaintiff was who he said he was as would a reasonable officer in the same situation possessing the same knowledge.

On the evening of February 21, 2013, two DeKalb County police officers arrived at the Fulton County Jail and immediately realized that Plaintiff was not Mr. Charles Gray. Plaintiff incorporates by reference herein as if set forth fully herein all factual allegations of his declaration paragraphs 2-29. Plaintiff is still under doctor's care for his injuries he received as a result of the excessive and painful handcuffing.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Standard of Review

Summary judgment is authorized only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,323, 106 S.Ct. 2548, 2552 (1986) (emphasis added). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.*, 477 U.S. at 322-23.

The moving party bears the burden of proving that no genuine issue of material fact exists. In evaluating whether the moving party has satisfied this burden, the Court must consider all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,255, 106 S.Ct. 2505 (1986); *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Likewise, all reasonable doubts about the facts are to be resolved in favor of the non-moving party. *Twiss v. Curry*, 25 F.3d 1551, 1555 (11th Cir. 1994). "If reasonable minds could differ on any inferences arising from the undisputed facts, summary judgment should be denied." *Id.* Furthermore, "if a reasonable fact finder can draw more than one inference from the facts, and that inference creates a genuine issue of material fact," summary judgment is likewise improper. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997); *Augusta Iron & Steel Works v. Employers Ins. Of Wausau*, 835 F.2d 855 (11th Cir. 1988).

In deciding a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these functions are solely within the province of the finders of fact (i.e., the jury). *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510; *Twiss*, 25 F.3d at 1555. If the record presents factual issues, the Court must not decide them; instead, the Court should deny the motion and proceed to trial. *See Burton v. Tampa Housing Auth.*, 271 F.3d 1274, 1277 (11th Cir. 2001); *O'Neal v. United States*, 258 F.3d 1265, 1270 (11th Cir. 2001). Essentially, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

On a summary judgment motion based on qualified immunity, as we have in the instant case, the Court is required to resolve all issues of material fact in favor of the plaintiff. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002), *citing Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir.1998). The Court then answers the legal question of whether the defendant [is] entitled to qualified immunity under that version of the facts." *Thornton v. City of Macon*, *132* F.3d 1395, 1397 (11th Cir.1998). The Eleventh Circuit Courts have even gone so far as to state that the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach*, 208

F.3d 919, 925 (11th Cir.2000). Nevertheless, for summary judgment purposes, the Court's analysis must begin with a description of the facts in the light most favorable to the plaintiff. *See* *Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir.2002).

**Federal Claims against Defendant in his Individual Capacity**

There are three levels of police-citizen encounters: 1) encounters in which the police officer seeks to communicate with the citizen without the coercion or detention proscribed by the fourth amendment; 2) brief *Terry* -type seizures that must be founded on reasonable suspicion; and 3) full scale arrests, requiring probable cause. *United States v. Berry*, 670 F.2d 583, 594-595 (5th Cir. 1982).

In this case, Plaintiff was initially detained by Officer Knapp allegedly to investigate his vehicle registration. It is clear from the facts that Plaintiff was not free to leave at that point, thus requiring reasonable suspicion. However, the detention soon became a full-scale arrest once Defendant told Plaintiff to exit his vehicle and put him in handcuffs, thus requiring probable cause.

This Circuit has held that a probable cause determination cannot stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence. *Kingsland v. City of Miami*, *382* F.3d 1220 (11th Cir. 2004). In the

instant case, Defendants' Motion for Summary Judgment relies solely on the declaration response of the Defendant in this case; who is an interested party.[1]

**Officer Not Entitled to Qualified Immunity for False Arrest**

The doctrine of qualified immunity shields from civil liability police officers and other government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the alleged misconduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is, as the term implies, qualified. It is not absolute. It contemplates instances in which a public official's actions are not protected. *See Madison v. Gerstein*, 440 F.2d 338, 341 (5th Cir.l971); *see also Butz v. Economou*, 438 U.S. 478, 506-07, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ("[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law, and that insisting on an awareness of clearly established constitutional limits will not unduly interfere with the exercise of official judgment."). The principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter officers who, because of

[1] Defendant's declaration and Motion for Summary Judgment is really just a sworn regurgitation of the answer that was filed.

their own interests, allegedly flout the law, abuse their authority, and deliberately imperil those they are employed to serve and protect.

To determine whether the doctrine applies, we consider "(1) if the facts, **construed in the light most favorable to the plaintiff,** show that a constitutional right has been violated; and (2) whether the right violated was clearly established." *Bailey v. City of Miami Beach*, 476 Fed.Appx. 193, 195 (11th Cir. 2012) (emphasis added).

**Fabrications to Support False Arrest Violated Plaintiff's Constitutional Rights**

It is clear that "an arrest without probable cause violates the right to be free from an unreasonable search and seizure under the Fourth Amendment." *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir.2003) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir.1998)). The facts in the record, **interpreted in the light most favorable to Plaintiff, sufficiently** allege a violation of his clearly established Fourth Amendment right to be free of unreasonable seizures.

If a constitutional violation can be made out on the Plaintiffs statement of the facts, the issue is "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Saucier v. Katz*. 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Taking the facts in the record in the light most favorable to

Plaintiff, no reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause nor arguable probable cause existed, unless based on fabrications, to arrest Plaintiff. In *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir.l993), the Court granted qualified immunity where government agents inspecting a restaurant made an improper arrest for a building code violation. Id. at 1558. The agents in *Post* claimed that they counted people in excess of the restaurant's maximum capacity, but in effect they erroneously counted employees who were not to be counted. The Court held that a "mistaken but reasonable count" was sufficient for the agents to establish arguable probable cause. *ld.* However, the agents in *Post* simply made a good faith mistake, whereas here, Defendant's conduct creates factual issues as to his honesty and credibility. **It** is readily apparent that the conduct in *Post* is characteristic of the type of conduct that the policies of qualified immunity seek to protect. In *Post*, the officials made a reasonable mistake in the legitimate performance of their duties, and there were no concerns regarding potential abuse of authority or motivation to make an arrest. Id. In contrast, Plaintiff contends that Defendant made several deliberately false statements to support his arrest, in violation of the law.

Defendant, Officer Kevin Knapp, essentially wants this Court to sanction his fabrications and misrepresentations and shield his egregious behavior with

qualified immunity and summary judgment in his favor. The individual Defendant, Knapp, has done nothing more than re-state his answer in the form of a declaration. Defendant states that he made a reasonable mistake as to the identify of Plaintiff in arresting Plaintiff on a warrant for another person. Plaintiff states that Defendant fabricated and made intentional misrepresentations to support the arrest of Plaintiff on the warrant for the arrest of another person and that the misidentification of Plaintiff was not a reasonable mistake, but instead a calculated intentional arrest based on those misrepresentations and fabrications. In *Rodriquez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002), the Eleventh Circuit discussed the concept of "a mistaken arrest" due to a misidentification under a valid warrant. The *Rodriquez* Court adopted the reasoning that a police officer acts reasonably if he/she arrests a person after determining that the person's name matches the name listed on the warrant, and that the trial Court should evaluate a §1983 claim of that type by looking at the totality of the circumstances to determine if qualified immunity will protect an officer from a mistaken arrest as long as the mistaken belief was reasonable in light of all the circumstances. In *Rodriquez's* case those circumstances evaluated by the 11th Circuit, were as follows:

*Rodriguez's identifying information was identical to the information listed in Heredia's warrant in four critical aspects: same name, same sex, same age, and same race.*

In Plaintiff Hudson's case; (1) Charles Gray's warrant did not list Plaintiff as an alias nor was Plaintiff's name on the warrant for Charles Gray (Exhibit D and E of Plaintiff's amended complaint); (2) Knapp's incident report does not show that Plaintiff and Charles Gray had the same social security number (Exhibit B to Plaintiff amended complaint); (3) Plaintiff and Charles Gray had different addresses, as Gray's address on the warrant (Exhibit C, D, and E to Plaintiff's amended complaint) was in Conyers, Georgia whereas Plaintiff's valid driver's license issued on April 13, 2011 and his then current vehicle registration listed Plaintiff's address as Atlanta, Georgia; (4) Plaintiff and Charles Gray had different dates of birth and Charles Gray was 10 pounds heavier than Plaintiff; (5) Unlike *Rodriquez*, Mr. Hudson was not a nighttime stop and there was no independent criminal activity to foreclose a reasonably thorough confirmation of Plaintiff's true identity as Plaintiff was detained for over an hour before being taken to jail (Paragraph 22 of Plaintiff amended complaint and paragraph 23 of Plaintiff's declaration); (6) Moreover, Charles Gray is a very dark skinned black male and Plaintiff is a light skinned black male[2]; (7) and most important, when two DeKalb County deputies came to the jail to take custody of Plaintiff they looked at him

[2] A person may tan up but a very dark skinned black male will not lighten up to Plaintiff's complexion unless he had on a "white face" mask. It's no way Plaintiff and Charles Gray could ever be the same complexion. A very dark African American getting lighter skinned is not an option for an African American dark skinned male.

and their paperwork and immediately stated that Plaintiff was not Charles Gray (Paragraph 29 of Plaintiff amended complaint and paragraphs 27-29 Plaintiff declaration).

In footnote 17 of the Rodriquez opinion the Eleventh Circuit stated as follows:

> *We very occasionally encounter the exceptional case in which a defendant officer's acts are so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable (by which we, in the qualified immunity context, always mean every objectively reasonable) officer that what the defendant officer was doing must be "unreasonable" within the meaning of the Fourth Amendment..*

In Davis v. City of Atlanta, 15-13001 (decided November 18, 2014 unpublished), the 11th Circuit discussed qualified immunity in the context of what more could a reasonable officer have done in conducting a more thorough investigation making an arrest (this was not a mistaken identity arrest), the Court framed the issue as to whether the pre-arrest "investigation was so deficient as to deprive" the officer of qualified immunity and whether "the record"[3] contained "any indication" that the officer "fabricated or misrepresented any information to support probable cause to arrest; citing Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir 2004).

---

[3] See opinion and order of Judge Thrash Davis v. City of Atlanta, case no.: 13-CV-2936 (TWT)

In America, probable cause nor arguable probable cause can be founded upon willful fabrications and intentional misrepresentations by police officers to arrest citizens on valid warrants for other people, otherwise we are all at the peril of the police officer who has no integrity; does not care whether he is arresting the right person or not and is willing to fabricate and misrepresent the facts to support such an arrest[4].

As in Rowe v. Fort Lauderdale, 279 F.3d 1271, 1281 (11th Cir. 2002), Mr. Hudson realizes that Defendant disputes Mr. Hudson's version and interpretation of the facts but on summary judgment this Court is bound to accept Plaintiff's version of the facts and draw all reasonable inferences from those facts in Plaintiff's favor. Officer Knapp lied from his initial contact with Plaintiff. Knapp said Plaintiff's vehicle was registered to Charles Gray and Plaintiff vehicle is not and never has been registered to Charles Gray (Exhibit D to Plaintiff amended complaint and exhibit 1 and 2 of Plaintiff's declaration). This Court should never reward a police officer with qualified immunity in a §1983 claim or any other claim when that officer starts off by lying and misrepresenting the facts to arrest a citizen. Lying, fabricating evidence, planting evidence, intentional misrepresentations in an effort to arrest and/or obtain a conviction does violate

---

[4] Yes even a white female could be arrested on a warrant for a black male by an officer willing to force fit pieces of the puzzle and make up reasons for doing so.

clearly established law, because it is so obviously wrong to do such a thing. *cf*. *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002); citing *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997).

In *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir 2004), the Eleventh Circuit stated that the trial court on summary judgment must, at the outset, recognize and give credence to allegations in a Plaintiff's complaint where fabrication is asserted in support an arrest. Once that assertion is recognized, the trial court should look at what was and was not said and/or done by the police that would or could show circumstantially that fabrication and/or misrepresentation was done to support that arrest; and further, summary judgment can't be granted to a Defendant police officer by his statements that merely counter Plaintiff's word *Kingsland*, supra at 1226.

The *Kingsland* case definitely holds that a Plaintiff can defeat summary judgment by circumstantial evidence with inferences drawn in Plaintiff's favor id at 1226-1228.

Binding precedent was clearly established at the time of Plaintiffs arrest that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures. *See, e.g., Davis* v. *Williams*,

451 F. 3d 759 911th Cir. 20060; Thornton v. City of Macon, 132 F. 3d 1395, 1399 (11th Cir. 1998), *Kingsland v. City of Miami*, 382 F. 3d 1220, 1226 (11th Cir. 2004).

Viewed in the light most favorable to Plaintiff, the evidence shows that Defendant in this case behaved in an objectively unreasonable fashion and is therefore not entitled to qualified immunity. There are questions of fact in this case regarding the integrity of the Plaintiff's arrest that was based on questionable arguable probable cause. As such, the question whether probable cause and/or arguable probable cause for the arrest existed is aptly suited for a jury.

**Knapp Used Excessive Force in Violation of Plaintiff's Fourth Amendment Rights**

A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir.2006). The Supreme Court has instructed that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386. 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the instant case, Knapp asserts he is entitled to qualified immunity. As stated above, to determine whether such immunity applies, the Court must examine whether "(1) if the facts, **construed in the light most favorable to the plaintiff**, show that a constitutional right has been violated; and (2)

whether the right violated was clearly established." *Bailey v. City of Miami Beach*, 476 Fed.Appx. at 195. (emphasis added).

The facts of the instant case are directly analogous to those presented to the Court in *Byrd v. Cavanaugh*, 269 Ga.App. 612 (2004). In *Byrd*, the Plaintiff claims that an officer used excessive force when handcuffing her by jerking the handcuffs up, resulting in a broken arm. *Id*. As in the instant case, the officer asserted qualified immunity. The Court concluded that Plaintiff's excessive force claim was premised upon "a clearly established right of which [Defendant] should have known, namely the right to be free from unreasonable search and seizure." The Court then addresses whether the Officer's actions were objectively reasonable, concluding that:

> *"accepting the Plaintiff's version of events to be true, which we must, we cannot say that use of force powerful enough to break [Plaintiff's] arm... was reasonably necessary in making her arrest. Nor can we conclude that it would not be readily apparent to [Defendant] that the use of such force was not excessive or in violation of [Plaintiff's] Fourth Amendment rights." Id. at 658.*

In the instant case, as in *Byrd*, Plaintiff asserts that he did not resist the officers while they were handcuffing him. Furthermore, Knapp was aware that such force was excessive and in violation of Plaintiff's rights based on Plaintiff's complaint of excessive pain and breathing problems. Thus, Defendant is not entitled to qualified immunity for Plaintiff's excessive force claim.

**Excessive Force Violation of Plaintiff's Constitutional Rights**

It is a core Fourth Amendment principle that law-enforcement officers may

not unnecessarily harm an individual during arrest. Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir.2008). Courts have dictated unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989); Lee v. Ferraro, 284 F.3d 1188 (2002); *See also*, e.g., Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir.1986) (holding that, in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted).

**Right to be Free from Excessive Force was Clearly Established**

We must now determine the second part of the qualified immunity analysis and determination: Whether the Defendants' actions violated clearly-established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 739, 2515 (1982).

The Eleventh Circuit has held that "[p]ainful handcuffing, without more, is not excessive force ... where the resulting injuries are minimal[5]. Byrd v. Cavanaugh, 269 Ga. App. 612 (2004). It is clear, based upon the holding in *Rodriguez,* the Eleventh Circuit recognizes that painful handcuffing, coupled with injuries that are *more than* minimal, may result in excessive force and rise to the level of a Fourth

[5] Here Plaintiff has been and still is under doctor's care for the injury inflicted by Knapp in handcuffing Plaintiff too tight. (Exhibit K of Plaintiff amended complaint of Plaintiff's declaration.

Amendment violation. Furthermore, the Court notes in *Hadley V. Gutierrez*, 526 F.3d 1324, (11th Cir. 2008), "that a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February, 2002." Moreover, the use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment at least as early as 1985. In *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694 (1985), the Supreme Court held that the Fourth Amendment governs not only whether a person or thing is subject to "seizure," but also "the manner in which a ... seizure is conducted." As the Court explained: To determine the constitutionality of a seizure "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion..." *Id*. Because one of the factors is the extent of the intrusion, it is becomes clear that reasonableness depends on not only when a seizure is made, but also how it is carried out. As such, the fact that an officer cannot use excessive force on an arrestee without violating the arrestee's constitutional rights has been clearly established at least as far back as 1985. *Id*. Lastly, if Plaintiff's was falsely arrested, then his handcuffing was excessive as a matter of law.

Accepting Plaintiff's version of the facts as true, as we must do in a Motion for Summary Judgment, because the force used by Knapp was in violation of Plaintiff's clearly established right summary judgment must be denied.

**The Plaintiff's State Law Claims Against Officer Knapp**

Officer Knapp argues he is entitled to official immunity from the Plaintiff's state law claims for false and excessive detention and intentional infliction of emotional distress, and for punitive damages. Official immunity protects public officers sued in individual capacities for misconduct in carrying out discretionary or ministerial activity. In Georgia, an officer:

> may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.[6]

In other words, to be liable under state law for the performance of a discretionary function, as Officer Knapp was undertaking here, Officer Knapp must have been acting with actual malice or intent to injure.

Here, the Plaintiff argues that Officer Knapp acted with actual malice because he fabricated, lied and was indifferent to Plaintiff's true identity (Paragraphs 13-21 of Plaintiff's declaration). In the context of official immunity, actual malice means a deliberate intention to do a wrongful act." As discussed above, Officer Knapp did wrongfully arrest and use excessive force against the Plaintiff. Here the record indicated that Officer Knapp had a deliberate intention to harm the Plaintiff, Officer

[6] Cameron v. Lang, 274 Ga. 122, 123 (2001)

Knapp is not entitled to official immunity, and the state law claims against him should not be dismissed.

While the arrest of Plaintiff was a discretionary act, it was done willfully and with malice. The Georgia Constitution provides that "[a]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages...if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. (1983), art. I, section 2, paragraph 9(d). For the reasons set forth above, Plaintiff has created a genuine issue of material fact as to whether Defendants acted with malice and intent to injure. As such, Summary judgment is inappropriate in this case.

**Conclusion**

WHEREFORE, Plaintiff has clearly presented issues of material fact as to each count alleged in his Complaint and as such, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted this 11th day of May, 2016.

***/s/ Dwight L. Thomas***

2296 Henderson Mill Road, Ste. 407
Atlanta, GA 30345
(404) 522-1400

Dwight L. Thomas
Attorney for Plaintiff
Georgia Bar No. 704825

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document was prepared in accordance with the requirements of Local Rule 5.1 of the Northern District of Georgia and that a 14 pt. Times New Roman font was used.

Respectfully submitted this 11th day of May, 2016.

***/s/ Dwight L. Thomas***

Dwight L. Thomas
Attorney for Plaintiff
Georgia Bar No. 704825

2296 Henderson Mill Road, Ste. 407
Atlanta, GA 30345
(404) 522-1400

## CERTIFICATE OF FILING AND SERVICE

This is to certify that on May 11, 2016, I electronically filed the above and foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

Respectfully submitted this 11th day of May, 2016.

***/s/ Dwight L. Thomas***

Dwight L. Thomas
Attorney for Plaintiff
Georgia Bar No. 704825

2296 Henderson Mill Road, Ste. 407
Atlanta, GA 30345
(404) 522-1400

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **RENARDO HUDSON,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | **1:15-CV-0451-WBH** |
| **v.** | ) | |
| | ) | |
| **CITY OF ATLANTA, GA; and** | ) | |
| **KEVIN KNAPP, individually and in his** | ) | |
| **Official capacity as an employee of the** | ) | |
| **City of Atlanta Police Department** | ) | |
| **Defendants.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was this day electronically filed with the Clerk of Court and served upon opposing counsel via the Court's CM/ECF System:

Honorable Tamara Nikki Baines
City of Atlanta, Department of Law
55 Trinity Avenue, Suite 5000
Atlanta, GA 30303

Respectfully submitted this 11th day of May, 2016.

***/s/ Dwight L. Thomas***
Dwight L. Thomas
Attorney for Plaintiff
Georgia Bar No. 704825

2296 Henderson Mill Road, Ste. 407
Atlanta, GA 30345
(404) 522-1400